IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE U.S. DIST. COURT
LYNCHBURG, VA
FILED
June 04, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ B. McAbee
DEPUTY CLERK

| | | |
|---|---|---|
| AMELIA MERCHANT, | ) | |
| **Plaintiff,** | ) | **Case No. 7:25-cv-00735** |
| v. | ) | |
| | ) | **By:    Michael F. Urbanski** |
| CITY OF ROANOKE, | ) | **Senior United States District Judge** |
| **Defendant,** | ) | |

## MEMORANDUM OPINION

Plaintiff Amelia Merchant filed this civil action under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., alleging that the defendant City of Roanoke unlawfully interfered with and retaliated against her for taking medical leave pursuant to the statute. ECF No. 1. This case is presently before the court on the motion to dismiss filed by defendant, ECF No. 2. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** defendant's Motion to Dismiss.

### I.    Factual Background

The following summary of the facts is taken from the complaint. Plaintiff Amelia Merchant was employed by defendant City of Roanoke ("the City") for nearly twenty-three years in various roles. ECF No. 1 ¶¶ 9-10. Starting in December 2017, Merchant served as the permanent Director of Finance. Id. ¶ 11. The position was stressful because of a high level of turnover throughout the finance department and difficulties filling vacant positions that increased the workload. Id. ¶ 12.

In her complaint, Merchant alleges that, after she received a threatening email from City Manager Bob Cowell, she was "moved into the newly created role of Deputy Director of Finance," where she reported to an intermediary rather than to Mr. Cowell directly. Id. ¶ 13.

1

As Deputy Director of Finance, Merchant was responsible for "Real Estate, Procurement, Management and Budget, Boards, Commissions, [and] Committees." Id. ¶ 38.

On February 1, 2024, Merchant notified her superiors, in accordance with FMLA procedures, that she required medical leave from March 6, 2024, to May 6, 2024. Id. ¶ 14. The City approved Merchant's requested FMLA leave through May 6, 2024, and later approved an extension through June 1, 2024. Id. ¶ 19.

While Merchant was on leave, she was contacted by City employees about a supervisor's "host[ile]" behavior in her absence toward another employee who Merchant had asked to "provide Director meeting coverage in her absence." Id. ¶¶ 20, 24. She subsequently contacted the Human Resources Department to file a report about the incident. Id. ¶ 25. Merchant alleges that this required her to perform work while on qualified leave. Id. ¶ 24.

In her complaint, Merchant also describes a series of changes to her job that occurred while she was on leave. On April 16, 2024, Merchant was assigned to the American Rescue Plan Act ("ARPA") project—a job that included a heavy work-load for which Merchant received no assistance, though she did ask for help. Id. ¶ 30. She was "expected to monitor distribution of funding within federal guidelines, ensure compliance with a December 31, 2024 deadline and prepare for a $64.6 million audit with no internal assistance, no training, and no support." Id.

On April 29, 2024, Merchant's job was "restructured," "removing responsibilities" that were given to another colleague. Id. ¶ 31. Ms. Merchant's new reporting structure meant that her work would be "supervised by the Accounting Supervisor," a position that was two paygrades lower than her own position. Id. ¶ 32. In her complaint, Merchant describes her

2

efforts while on FMLA leave to file a complaint against the employee who was "given all of Ms. Merchant's duties and responsibilities" and obtain permission to communicate another employee's departure. Id. ¶¶ 28, 32-33. Her efforts, she alleges, were stymied by Human Resources and by the City, who told Department of Finance employees not to contact council members. Id. ¶¶ 33-34.

After returning from leave, Merchant requested the "restoration of her supervisory responsibilities and authority," for a meeting with the Acting City Manager, and for a weekly meeting with the Acting Finance Director to "provide input for decisions" and "be kept abreast of departmental changes"—these requests were denied. Id. at 7.

In early August 2024, Merchant was transitioned into a newly-created "Project Consultant-ARPA Role," which she alleges was a demotion. Id. ¶ 35-38. The alleged differences between Merchant's old position and her new one include:

(a) Loss of supervisory authority;
(b) Loss of promotional career track;
(c) Loss of inclusion in organizational activities and announcements;
(d) Visible exclusion from departmental and organizational activities;
(e) Loss of interaction with approximately forty staff members;
(f) Loss of professional interaction with participation on numerous Boards, Commissions, Authorities and Committees;
(g) Lack of support for participation in organizations. Participation in meetings resulting from Professional Board and Committee memberships were questioned/denied. …
(h) Exclusion from participation in Council-related events;
(i) Exclusion from leadership-related events; and
(j) Exclusion from training opportunities.

Id. ¶ 39.

Merchant claims that she did not receive any job description, training, or support for her new ARPA reporting and compliance role. Id. She also alleges that, while her performance had not been reviewed since 2016, she never received a negative review. Id.

Moreover, Merchant claims that once she received clearance from her healthcare provider to return to the office part-time, the City required her to continue teleworking without explanation. Id. ¶40. "[A]s a result of these ongoing workplace behaviors," Merchant suffered extreme stress, sought psychological treatment from a healthcare practitioner, and was prescribed medication for depression and anxiety. "The side effects of the medication caused Ms. Merchant to have seizures resulting in a fall and a permanent dent to her forehead. The fall required Ms. Merchant to be taken to the emergency room by ambulance, adding to her medical expenses." Id. ¶ 41.

Merchant submitted a notice of retirement on October 18, 2024, to be effective on March 1, 2025. Id. ¶ 42. She claims that she "felt forced to retire to escape the unlawful environment." Id.

Ultimately, Merchant alleges that the City discriminated and retaliated against her by demoting her for taking FMLA leave. Id. at 12. As a result of the demotion, she "lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Defendant's [discriminatory and retaliatory conduct]." Id. ¶ 69. Further, Merchant alleges that the City constructively discharged her in retaliation for her FMLA leave. Id. ¶ 77.

II.     **Procedural History**

Merchant filed her complaint alleging interference, discrimination, and retaliation in violation of the FMLA against the City of Roanoke on October 10, 2025. ECF No. 1. The City of Roanoke responded on November 21, 2025, with a Motion to Dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 2. On December 5, 2025, Merchant filed a Brief in Opposition to Defendant's Motion to Dismiss, conceding Count One (FMLA Interference), but arguing that her complaint states a claim for Counts Two and Three (Discrimination and Retaliation in violation of the FMLA). ECF No. 10. The City of Roanoke replied, requesting the Court to dismiss all Counts. ECF No. 11. The Court held a hearing on the City's Motion to Dismiss on January 7, 2026.

### III. Standard of Review

Defendant has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). See ECF No. 2. To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

### IV. Analysis

Merchant raises three counts against the City of Roanoke. She alleges that the City interfered with her medical leave by requiring her to work (Count I), that the City demoted her (Count II) and constructively discharged her from her position (Count III) in retaliation for her usage of her FMLA rights. ECF No. 1. Defendant City of Roanoke has moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 2. For the reasons described herein, the court **GRANTS** the motion to dismiss with respect to Counts I and III and **DENIES** the motion to dismiss with respect to Count II.

### A. Count I

Plaintiff has indicated that she will not be advancing Count I, FMLA interference, of her Complaint.  ECF No. 10 at 1. Count I is **DISMISSED** without prejudice.

### B. Count II - Demotion

In Count II (retaliatory demotion), Merchant alleges that she was demoted as retaliation for using her FMLA leave. More specifically, she alleges that because she properly notified the City of her need for FMLA-qualifying need, the City "discriminated and retaliated against [her] by demoting [her] employment," and that the City "would not have demoted [her] employment but for [her] requests related to FMLA leave." ECF No. 1 ¶¶ 66-67.

In the motion to dismiss, the City argues that Merchant's complaint fails to sufficiently allege that her new Project Consultant-ARPA Role was materially adverse or worse than her prior position as Deputy Director. ECF No. 3 at 7–10. The City also claims that Merchant fails to allege that any adverse action was causally connected to her FMLA leave, especially because Merchant includes various allegations instead implying retaliation for her reporting activities. Id. at 9–10.

6

Because Merchant alleges facts to support a prima facie case of retaliatory demotion, the court **DENIES** the City's motion to dismiss as to Count II.

The Family and Medical Leave Act bars employers from retaliating against employees for asserting their FMLA rights. The statute makes it unlawful to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter" and "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C.A. § 2615(a)(1)-(2).[1]

The Fourth Circuit applies the same three-part analysis for FMLA retaliation claims that it uses for Title VII retaliation claims. "Under that analysis, the plaintiff must show that [1] [s]he engaged in protected activity, that [2] the employer took adverse action against [her], and [3] that the adverse action was causally connected to the plaintiff's protected activity."

---

[1] Plaintiff argues that her retaliation claim alleged in Count II "focuses on the 'in any other manner discriminate" clause of [29 U.S.C.] § 2615(a)(2)." ECF No. 10 at 2. This fits with the Fourth Circuit's analysis in Yashenko v. Harrah's NC Casino Co., LLC, and subsequent case law. 446 F.3d 541 (4th Cir. 2006).

However, the Fourth Circuit has recently indicated that a retaliation claim may be more appropriately brought under the interference clause. See Fry v. Rand Constr. Corp., 964 F.3d 239, 245 (4th Cir. 2020) reasoning that "the Department of Labor issued regulations offering a different interpretation of § 2615(a) ... suggest[ing] that claims for retaliation for taking leave arise under § 2615(a)(1), not § 2615(a)(2)")(citing 73 Fed. Reg. 67986 (Nov. 17, 2008); 29 C.F.R. § 825.220(c)(2013)). Fry did not resolve this issue "because the plaintiff in that case relie[d] upon the McDonnell Douglas framework to establish her claim" and did not meet that framework's evidentiary standard at trial. Id. at 246.

This change could alter the causation standard for retaliation claims. See Hannah P. v. Haines, 80 F.4th 236, 258 n.7 (4th Cir. 2023)(Gregory, J. dissenting)("[T]he causation standard for retaliation claims should track the causation standard for other interference claims—that is, the two-step same-decision test [rather than the McDonnell Douglas framework, which places the ultimate burden on the plaintiff to prove but-for-causation]… the regulations themselves indicate that the courts should apply that test to retaliation claims, providing that employers may not 'use the taking of FMLA leave as a negative factor in employment actions.'")(quoting 29 C.F.R. § 825.220(c))(emphasis added).

Either way, the court's analysis at the motion to dismiss stage does not change. Here, in order to state a claim, Merchant must allege facts in her complaint to support a reasonable inference that the was entitled to FMLA benefits, she was retaliated against for her use of those benefits, and that there was a causal connection. See infra.

7

<u>Cline v. Wal-Mart Stores, Inc.</u>, 144 F.3d 294, 301 (4th Cir. 1998)(citing <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989)). <u>See also</u> <u>Cscismann v. Sallada</u>, 211 F. App'x 163, 167-168 (4th Cir. 2006)(citing <u>Munday v. Waste Mgmt. of N. Am., Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997)).

Here, the parties do not dispute whether Merchant [1] engaged in protected activity. ECF Nos. 1 ¶¶ 17, 19, 65; 3 at 8. The dispute is whether the City [2] took an adverse action against her, and [3] whether that action was causally related to the protected activity.

### 1. Adverse action

As for pleading an adverse action, "to prevail on her retaliation claim, [plaintiff] [is] required to show that 'a reasonable employee would have found [her] reassignment to be materially adverse, in that it 'might have dissuaded a reasonable worker' from pursuing" a complaint. <u>Heckert v. Bisignano</u>, 151 F.4th 157, 166 (4th Cir. 2025)(quoting <u>Herkert v. Kijakaazi</u>, No. 1:22-cv-03139-LKG, 2024 WL 1050831, at *7 (D. Md. Mar. 11, 2024)). It is not enough to allege non-material harms; the harms need to be significant. <u>See id.</u> <u>See also</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68, (2006)("We speak of <u>material</u> adversity because we believe it is important to separate significant from trivial harms.")

"[A]ny eligible employee who takes leave under section 2612 … for the intended purpose of the leave shall be entitled, on return from such leave … to be restored by the employer to the position of employment held by the employee when the leave commenced; or … to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). "The applicable regulation, 29 C.F.R. § 825.215(a), clarifies that an 'equivalent position' is one that is 'virtually

identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities.'" Laing v. Fed. Exp. Corp., 703 F.3d 713, 723 (4th Cir. 2013). However, the right to return to an equivalent position is not absolute—the FMLA does not "entitle any restored employee to … any right, benefit, or position of employment other than [one] to which the employee would have been entitled had the employee not taken the leave." Id. (quoting 29 U.S.C. § 2614(a)(3)(B)).

A court "focuses on metrics like the employee's salary, benefits, and opportunity for promotion" when "finding an adverse employment action." Cscismann, 211 F. App'x. at 168 (citing James v. Booz-Allen & Hamilton, 368 F.3d 371, 376 (4th Cir. 2004)).[2] The court is not limited to only those factors. See, e.g. Heckert, 151 F. 4th at 165 (holding, inter alia, that whether a loss of supervisory authority suffices as a "disadvantageous change" in employment status that would be actionable in a discrimination claim is "a context-specific inquiry…for a jury to assess."); see also Burlington, 548 U.S. at 63-64 ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing

---

[2] The Supreme Court recently abrogated the Fourth Circuit's ruling in James, specifically in regard to the standard for pleading discrimination claims under Title VII of the Civil Rights Act. Muldrow v. City of St. Louis, Missouri, 601 U.S. 346 (2024). Under Muldrow, an employee alleging discrimination under Title VII need not allege "significant" harm, only that there was "some harm respecting an identifiable term or condition of employment." Id., 601 U.S. at 355.

However, Muldrow also held that the standard was unchanged for retaliation claims, where Title VII (and FMLA) anti-retaliation statutes apply "only when the retaliatory action is 'materially adverse,' meaning that it 'creates significant harm.'" Id. at 357. That "significant harm" standard was adopted "for reasons peculiar to the retaliation context" in order "to capture those (and only those) employer actions serious enough to 'dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006). See also Cline, 144 F.3d at 301 ("[W]e believe this [Title VII retaliation] analysis is applicable to the FMLA.") Thus, Muldrow does not abrogate the "significant harm" standard for retaliation claims, and the court continues to apply that standard here.

him harm outside the workplace…purpose reinforces what language already indicates, namely, that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory conditions that affect terms and conditions of employment.")(citing Rochon v. Gonzales, 438 F.3d 1211, 1213 (D.C. Cir. 2006); Berry v. Stevinson Chevrolet, 74 F.3d 980, 984, 986 (10th Cir. 1996)).

In the complaint, Merchant alleges that the job she had when she returned from FMLA leave was significantly different from the one she had before she took leave. ECF No. 1 ¶¶ 30-31. She also alleges that shortly after her return from FMLA leave, she was "transitioned out of her position as Deputy Director and into a newly-created "Project Consultant-ARPA Role." Id. ¶ 36. Merchant alleges many significant differences between her pre-leave position and her new, post-leave position, including:

(a) Loss of supervisory authority;
(b) Loss of promotional career track;
(c) Loss of inclusion in organizational activities and announcements;
(d) Visible exclusion from departmental and organizational activities;
(e) Loss of interaction with approximately forty staff members;
(f) Loss of professional interaction with participation on numerous Boards, Commissions, Authorities and Committees;
(g) Lack of support for participation in organizations. Participation in meetings resulting from Professional Board and Committee memberships were questioned/denied. As an example, Plaintiff regularly attended the Fall and/or Spring Virginia Government Finance Officers Association Conference as part of her duties. Her request to attend the Fall 2024 conference in her demoted role was never approved. Ms. Merchant was notified of a denial on the first day of the Conference. Ms. Merchant was serving on the Conference Committee at the time of the denial. Previously, all requests were granted.
(h) Exclusion from participation in Council-related events;
(i) Exclusion from leadership-related events; and
(j) Exclusion from training opportunities.

ECF No. 1 ¶ 39. The long list of these factors raises the reasonable inference that this amounts to a demotion, which is the legal conclusion that Merchant alleges in her complaint. Id.

The City argues in its motion to dismiss that this list of alleged differences is insufficient to state a claim because Merchant did not "assert[] facts related to whether they made her job materially worse such that a reasonable person would be dissuaded from engaging in protected activity as a result." ECF No. 3 at 9. To be sure, "[c]ontext matters," and "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or physical acts performed." Burlington, 548 U.S. at 69 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82 (1998)). Here, the court finds Merchant's list of alleged differences between her pre-FMLA-leave and post-FMLA-leave positions sufficient to support an inference that they would be seen as a significantly materially adverse by a reasonable employee. Merchant has sufficiently pled that there was an adverse action.

### 2. Causal connection

As for causal connection, Merchant argues that the temporal proximity between Merchant's taking of leave (ending June 2024) and the alleged demotion (August 2024) sufficiently alleges that there was a causal connection. See ECF No. 10 at 5-6 (citing King v. Rumsfeld, 328 F.3d 145 (4th Cir. 2003); Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir. 1989); Price v. Thompson, 380 F.3d 209 (4th Cir. 2004); Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 656 (4th Cir. 2017); Clark Cnty. School Dist. V. Breeden, 532 U.S. 268 (2001)).

By contrast, the City argues that "there is no connection alleged," and that Merchant's complaint alleges facts that would support an inference "that the City's actions were motivated by reasons other than Merchant's exercise of FMLA leave," namely, her report of another employee's behavior, and her filing complaints with human resources. "Fatally," the City argues, Merchant alleges that her position was threatened by Bob Cowell before she even requested leave. ECF No. 3 at 9-10.

"Close temporal proximity can demonstrate causation, an element of [plaintiff's] prima facie case of retaliation." Cole v. Family Dollar Stores of Maryland Inc., 811 F. App'x 168, 174 (4th Cir. 2020)(citing Waag v. Sotera Defense Sols., Inc., 857 F.3d 179, 192 (4th Cir. 2017)("For purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.")(citing Price, 380 F.3d at 213, abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013))).

"We are also mindful, however, of the fact that generally the passage of time…tends to negate the inference of discrimination." Price, 380 F. 3d at 213 (finding that a plaintiff had established a prima facie case of discrimination where there was a nine to ten month gap between the protected activity and the alleged retaliation because the retaliatory conduct happened "at the first available opportunity.") "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist., 532 U.S. at 274 (finding that a 20-month delay "suggests, by itself, no causality at all")(quoting O'Neal v. Ferguson Constr. Co.,

237 F.3d 1248, 1253 (10th Cir. 2001)("very close"); also citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997)(3-month period sufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992)(4-month period insufficient)). See also Williams, 871 F.2d at 457 (three months sufficient for the "less onerous burden of making a prima facie case of causality"); King, 328 F.3d at 151 n.5 (two months and two weeks sufficient).

Here, Merchant alleges that she went on FMLA leave beginning March 6, 2024, and her job was restructured on or about April 16, 2026 and April 29, 2024. ECF No. 1 ¶¶ 19, 30, 31. She alleges that two months after her return to work on June 1, 2024, she was permanently transitioned out of her role and into one she alleges was materially worse. Id. ¶¶ 19, 36. These changes – between one and two months apart, each, are sufficient at the pleading stage to state a claim of causality.

At this stage of the proceedings, Merchant need only allege facts plausibly supporting a reasonable inference of causation. Ashcroft, 556 U.S. at 678. She has met that burden here. The court **DENIES** the City's motion to dismiss as to Count II.

### C. Count III – Constructive Discharge

In Count III, Merchant alleges that she was constructively discharged from her position in retaliation for utilizing her FMLA leave. Specifically, she alleges that by "demoting her from her prior position, stripping her of significant responsibilities, and substantially reducing her authority and opportunities for advancement," the City "created an intolerable working environment in which a reasonable person would have resigned due to the hostility" and "constructively discharged [Merchant] in retaliation for her usage of FMLA rights." ECF No. 1 ¶¶ 45, 76-77.

13

"To establish constructive discharge, an employee must meet a high standard." Ofoche v. Apogee Med. Grp., Virginia, P.C., 815 F. App'x 690, 692 (4th Cir. 2020). The employee must show both that (1) "[her] 'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign'" and she must (2) actually resign. McCormack v. Blue Ridge Behav. Healthcare, 523 F. Supp. 3d 841, 851 (W.D. Va. 2021), aff'd sub nom. McCormack v. Blue Ridge Behav. Healthcare, Inc., No. 21-1447, 2022 WL 16630565 (4th Cir. Nov. 2, 2022)(quoting Perkins v. Int'l Paper Co., 936 F.3d 196, 211 (4th Cir. 2019)); see also Green v. Brennan, 578 U.S. 547, 555 (2016). The level of intolerability required is one so high that "a reasonable person in her position 'would have had no choice but to resign.'" Id. (quoting Perkins, 936 F.3d at 212). "[D]ifficult or unpleasent working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign." Id. (quoting Perkins at 212).

As alleged in the complaint, Merchant's theory of constructive discharge hinges on her theory of demotion. While "[d]emotion can constitute a constructive discharge, especially where the demotion is essentially a career-ending action or harbinger of dismissal[,] … mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign. Even a slight decrease in pay coupled with some loss of supervisory responsibilities, is insufficient evidence of constructive discharge." James, 368 F.3d at 378 (cleaned up)(quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)).

The City notes that because Merchant was working from home, "she generally cannot prevail on a claim that her work environment is so objectively intolerable that she has no

14

choice but to resign." ECF No. 3 at 11 (citing Sandoval v. Boulder Reg'l Communs Ctr., 388

F.3d 1312, 1326 (10th Cir. 2004)(finding, inter alia, that an employee did not sufficiently allege

that her working conditions were objectively intolerable because "she received permission to

work from home and thus was not forced to work in an office she disliked.")). The City also

argues that Merchant's dissatisfaction with her new role, including her exclusion from certain

meetings, decisions, and opportunities "does not result in an objectively intolerable work

environment." Id. (citing Duffy v. Paper Magic Grp., 265 F.3d 163, 169 (3d Cir. 2001)("no

reasonable trier of fact could conclude that exclusion from committee membership or lack of

hiring authority renders working conditions objectively intolerable.")) And, the City argues,

the fact that Merchant opted to continue working for the City for four months after her

announcement of retirement indicates that her conditions were not intolerable to a reasonable

person. Id. at 12 (citing Moore v. San Carlos Park Fire Prot. & Rescue, 808 F. App'x 789, 798

(11th Cir. 2020)("In determining whether a reasonable person would be compelled to resign,

courts consider the amount of time between the objectionable acts and the constructive

discharge, with a longer gap cutting against reasonableness."); Poland v. Chertoff, 494 F.3d

1174, 1185 (9th Cir. 2007)(finding no constructive discharge where Plaintiff "worked … for

five months before deciding to retire[, and e]ven after he decided to retire, [Plaintiff] worked

the same job for three more months"); McKethan v. Tex. Farm Bureau, 996 F.2d 734, 741

(5th Cir. 1993)("Our conclusion [that there was no constructive discharge] is buttressed by the

fact that [Plaintiff] voluntarily delayed retirement for 13 months for tax benefits, and that,

subsequent to retirement, requested his job back.")).

The court agrees. Constructive discharge comes with a high pleading standard. As pled, the facts in Merchant's complaint do not support a reasonable inference that her working conditions were so intolerable as to compel a reasonable person to resign. The court therefore **GRANTS** the City's motion to dismiss with respect to Count III.

## V.      Conclusion

For the foregoing reasons, the court **GRANTS** defendant's motion to dismiss with respect to Counts I (FMLA interference) and III (FMLA retaliation – constructive discharge). The court **DENIES** defendant's motion to dismiss with respect to Count II (FMLA retaliation - demotion).

Entered:    June 3, 2026

Michael F. Urbanski
U.S. District Judge
2026.06.03 14:08:55
-04'00'

Michael F. Urbanski
Senior United States District Judge

16